DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
|         Plaintiff, | ) CASE NO. 5:11 CV 770 |
| v. | ) FINDINGS OF FACT AND |
| $677,660.00 in U.S. Currency, | ) CONCLUSIONS OF LAW |
|         Defendant, | ) |
| and | ) |
| Khalilah Crumpler, | ) |
|         Claimant. | ) |

The United States of America filed a complaint in forfeiture against the $677,600.00 Defendant Currency which was seized on October 20, 2010 and is now in the possession of the federal government.  ECF 1. The complaint alleges that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds from drug trafficking activities and/or was used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. § 841(a).  *Id.*  Subsequent to the seizure, the DEA commenced an administrative forfeiture proceeding against Defendant Currency and a claim was submitted in the administrative proceeding by claimant Khalilah Crumpler (Crumpler), from whom the Defendant Currency was seized after she was arrested following a traffic stop by Twinsburg, Ohio police.  Crumpler's arrest was based on an active warrant for failure to appear in court in Mayfield Heights, Ohio.

(5:11 CV 770)

Crumpler's claim led to the filing of this judicial forfeiture action. After the case was filed, Khalilah Crumpler filed a verified claim to the Defendant Currency. ECF 8. The government moved to strike Crumpler's claim (ECF 23), which was opposed by Crumpler (ECF 24).

A hearing on the merits of this case was conducted on November 30, 2011 and December 1, 2011.[1] Before the hearing, the parties submitted the stipulated testimony of Twinsburg Patrolman Yamil Encarnacion. ECF 28.

At the hearing, Twinsburg Police Department Officers Dan Fidoe and Darrin Fate, Twinsburg Police Department Sergeant Mark Kreiger, Claimant Khalilah Crumpler, and Agent Joseph Harper from the United States Drug Enforcement Administration testified.[2] Each witness gave lengthy testimony, during which time the Court had an opportunity to evaluate their demeanor and credibility. After considering the testimony of all the witnesses and all of the admitted documentary evidence, the Court makes its Findings of Facts and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

Each of the Court's Findings of Fact and Conclusions of Law represent the Court's consideration of all of the evidence in light of the pertinent law and the Court's consideration and evaluation of the witnesses' qualifications, demeanor and credibility. Further, any

---

[1] In her post-hearing brief, Claimant stated that "we deem the facts developed at the Hearing, augmented by the parties' written submissions to have aptly postured all the issues required to be resolved in this case." ECF 36-2.

[2] After the hearing, the transcript was prepared and the parties were granted leave to each file their proposed findings of facts and conclusions of law and supplemental briefs. ECF 34. The parties proposed findings of facts and conclusions of law were timely filed (ECF 35), as were their supplemental briefs (ECF 36).

2

(5:11 CV 770)

conclusion of law that may be construed to include a finding of fact is hereby adopted as a finding of fact. *See Reznick v. Provident Life and Accident Insurance Co.,* 364 F. Supp. 2d 635, 636 (E.D. Mich. 2005)(citing *Seal-Flex, Inc. v. W.R. Dougherty and Associates, Inc.,* 254 F. Supp. 2d 647, 649 (E.D. Mich. 2003)).

The Court's use of headings is for convenience only. In some cases, the same or similar findings are repeated under different headings. However, if a Finding of Fact or Conclusion of Law is pertinent to any other finding of fact or conclusion of law contained herein other than that indicated by the heading under which it appears, that finding or conclusion is adopted as a finding or conclusion applicable to such other determinations as may be appropriate. *Id.*

The Court's Findings of Fact are supported by the parties' stipulation, trial testimony, exhibits, the Court's evaluation of the credibility of the witnesses, and all the evidence before it. All of the Court's Findings of Fact are supported by the record and the Court's determinations regarding witness credibility.

## I. THE COURT'S FINDINGS OF FACT

1. On October 20, 2010, at approximately 1:46 a.m., while on patrol, Twinsburg Patrolman Yamil Encarnacion ("Encarnacion") observed a Hummer vehicle with a license plate illumination violation.

2. Encarnacion conducted a traffic stop for said violation.

3. The vehicle's sole occupant was the driver, Khalilah Crumpler ("Crumpler"). Ex. 12 (Stipulated Testimony of Twinsburg Patrolman Yamil Encarnacion at Par. 2).

(5:11 CV 770)

4.     After identifying Crumpler, Encarnacion conducted a routine police check and learned that Crumpler had an active arrest warrant issued by the City of Mayfield Heights, located in Ohio.

5.     Based on the Mayfield Heights warrant and at the request of Mayfield Heights, Encarnacion arrested Crumpler. *Id*. at Par. 3.

6.     Crumpler was not the owner of the Hummer.

7.     Because Crumpler was under arrest, she could not drive the vehicle based on the policy of the Twinsburg police department. As only the registered owner of the vehicle can claim it, the vehicle was towed to the Twinsburg police department.[3]

8.     It is also the policy of the Twinsburg police department that prior to towing a vehicle, the vehicle must be inventoried, not only for the protection of the police department but also for the protection of the owner. *Id*. at Par. 4; *see also* Ex. 13 (City of Twinsburg Ordinance at (a)(7)) and Ex. 5 (Twinsburg Police Department Inventory Policy).

9.     The vehicle was inventoried in accordance with the Inventory Policy of the Twinsburg Police Department. During the inventory of the vehicle, the Defendant Currency was discovered.

10.    Some of the currency was wrapped with dryer sheets and saran wrap which Encarnacion knew, based on his training and experience, was used by drug traffickers to mask the odor of illegal drugs. *Id*. at Par. 5; *see also* testimony of Sergeant Mark Kreiger (Tr. at 54,55).

---

[3] Government's Exhibit 5, which was admitted into evidence at the hearing, the "Twinsburg Police Department Policy/Procedure for Inventory Searches for Vehicles," is attached hereto as Attachment 1.

(5:11 CV 770)

11. During the transportation of Crumpler to the police station she was given her Miranda warnings.

12. Encarnacion asked Crumpler about the Defendant Currency.

13. Crumpler responded she didn't know anything about the Defendant Currency and stated that it was not hers. *Id.* at Par. 6.

14. During Crumpler's booking and processing at the police station, a drug detection dog gave a positive alert to the Hummer and the Defendant Currency.

15. The positive alert indicated that the Hummer and Defendant Currency had been in contact with illegal drugs . *Id*. at 7.

16. The police vehicle driven by Encarnacion had a video camera mounted on its dashboard.

18. The DVD admitted as government's Exhibit 1 at the hearing is a true and correct copy of the video recorded by the camera of Crumpler's arrest and accurately reflects the events which occurred.

19. During Crumpler's interview at the Twinsburg police station by Sergeant Mark Kreiger ("Kreiger"), Crumpler was asked if she knew where the Defendant Currency came from.

20. Crumpler responded that she was unaware of the money in the car. Tr. at 51, 53.

21. In a prior state forfeiture action Crumpler admitted the defendant currency did not belong to her. Tr. at 96-97.[4]

---

[4] At the hearing on the merits in the instant case, the Claimant was questioned on cross-examination about the testimony Claimant gave previously concerning Defendant Currency, that previous testimony given by Clamant in an earlier state forfeiture action for approximately $10,000. The relevant portion of the transcript from the hearing on the merits in the instant case,
(continued...)

(5:11 CV 770)

22. Prior to Crumpler's arrest on October 20, 2010, Kreiger received information that Crumpler's residence at 2938 Granby Circle might be involved in drug trafficking.

---

[4](...continued)
is quoted as follows:

> Q. Okay. Now, also, I am going to call your attention when the assistant county prosecutor, Mary Ann Kovach, asked you if the money that was seized from the car, the 600,000-some-odd dollars was seized, if it belonged to you, and you said no. Isn't that correct?
> A. According this paper, yes, I guess.
> Q. So in court under oath -- actually, the question was kind of inartfully phrased.
> . . .
> Question, line 18: 'Did you know the money was in the car, the $667,000?
> "Answer: I as unaware of it.
> "Question: You were unaware of it? Can I assume then that since you were unaware of it, that that money does not belong to you?
> "Answer: Yes."
> A. I guess that's what I said that day.
> Q. So you said that, you said that on July 20, 2011?
> A. Well, I was a little confused, because I was there for a jury, so I don't know.
> Q. You were there for what?
> A. I was in court for my jury and my $10,000. I didn't know I was in court for the $600,000.
> Q. That doesn't change the fact of ownership. That doesn't change your answer.
> A. I was confused as to what I was going to court for.
> Q. So your answer as to whether you know about the money or it is your money depends on the situation?
> A. Well, I just was confused at the time when she was questioning me.
> Q. But you did say under oath 'no,' right?
> A. I guess I did.
> Q. You didn't know about the money in the car and it wasn't your money?
> A. Yes, I do know about the money. That's how I knew it was not a million dollars.
> Q. But your answer then was, "No, I don't know about the money," correct?
> A. Yes, I guess.

Tr. pp. 96-98.

6

(5:11 CV 770)

23. Kreiger conducted surveillance on the residence between early 2010 through the date the defendant currency was seized on October 20, 2010.

24. Kreiger observed vehicles arriving at the residence throughout the night for five minutes or so and then leave.

25. One of the vehicles Kreiger observed was registered to Jimmy Goodgame who recently pleaded guilty in federal court to laundering drug proceeds.

26. Another vehicle Kreiger observed was registered to Vincent Shah who has a lengthy record for drug trafficking.

27. Based on Kreiger's training and experience, such activity was indicative of drug trafficking.

28. During his earlier surveillance of the residence, Kreiger also observed the Hummer vehicle driven by Crumpler at the time of her arrest. Tr. at 47-51.

29. After the defendant currency was seized, the Twinsburg police chief made the decision to request a federal forfeiture of the defendant currency. Tr. at 64-65.

30. Thereafter, Kreiger asked DEA to adopt the case. Tr. at 114.

31. After a series of e-mails between the Cleveland Resident Office of DEA and the Washington asset forfeiture section of DEA, the forfeiture was adopted by DEA on November 10, 2010 (Ex. 6).

32. Thereafter, DEA commenced administrative forfeiture proceedings against the defendant currency.

33. Crumpler filed a claim in the administrative proceedings.

7

(5:11 CV 770)

34.     On April 20, 2011, the government filed a Complaint in Forfeiture in this Court against the Defendant Currency.[5]

35.     Crumpler filed a Verified Claim in the forfeiture action in this Court claiming she is the "part-owner and bailee" of the Defendant Currency.

36.     Several times during the evidentiary hearing, Crumpler admitted she had previously declared the Defendant Currency was not hers. Tr. at 86, 89, 90, 97, 98.

37.     Crumpler also testified that she was given the Defendant Currency over a period of years by someone she "seeing" named Jesus Gonzales, whom she has no way to contact. Tr. at 77-83.

38.     Crumpler's unsupported explanation of how she came into possession of the Defendant Currency is not credible, and is inconsistent with her earlier statements that the Defendant Currency was not hers.

## II. LEGAL ANALYSIS AND THE COURT'S CONCLUSIONS OF LAW

### Inventory Search and Seizure Constitutional

The evidence before the Court, including the stipulated testimony of Twinsburg Officer Encarnacion clearly establishes that: 1) Crumpler was stopped by the Twinsburg police on October 20, 2010 for a traffic violation, 2) that Crumpler was arrested on the basis of an outstanding arrest warrant from Mayfield Heights, Ohio, 3) that there was no other occupant in

---

[5] The government alleged that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds from drug trafficking activities and/or was used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. § 841(a) (Court Doc. 1: Complaint).

8

(5:11 CV 770)

the vehicle who might have been able to drive the vehicle, 4) that before the vehicle was towed the Twinsburg police department policy required an inventory of the vehicle, 5) that the inventory was conducted in accordance with the Twinsburg police department policy, 6) and that the seizure of the Defendant Currency discovered during the inventory search was made in accordance with Twinsburg police department policy and was constitutional,[6] and did not, as claimed by Claimant, violate the Fourth Amendment.

An inventory search without a warrant undertaken for the purposes and in accordance with the procedures identified in the Twinsburg police department policy does not violate the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (warrantless inventory searches approved to protect owner's property and to protect police against claims of stolen property and from potential danger).  An officer's suspicion that there may be contraband in the vehicle does not invalidate an otherwise proper inventory search. *United States v. Smith,* 510 F.3d 641, 650-51 (6th Cir. 2007).[7]

---

[6] The evidence in the record supports a conclusion that the inventory search was conducted after Claimant was arrested on an outstanding warrant at the request of Mayfield Heights, Ohio in accordance with the Twinsburg police department policy for the lawful purposes described therein, and was not an unconstitutional "ruse for a general rummaging in order to discover incriminating evidence" as Claimant argues. *See Florida v. Wells,* 495 U.S. 1 (1990).

[7] Fourth Amendment reasonableness is an objective inquiry regulating conduct rather than thoughts.  In this case, there is no question that the Twinsburg police department were engaging in bona fide law enforcement activities when the Defendant Currency was discovered which were objectively reasonable under the Fourth Amendment.  Contrary to the contention of Claimant, the alleged improper motivations of the Twinsburg police with respect to the inventory search do not render unreasonable, and therefore unconstitutional, an otherwise constitutionally reasonable search, as was the case here. *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Sease*, 659 F.3d 519, 523-24 (6th Cir. 2011).

(5:11 CV 770)

*The Court's Conclusion of Law:*

A.    The Twinsburg police department's traffic stop and arrest of Crumpler, inventory search and seizure of the Defendant Currency, was constitutional and did not violate the Fourth Amendment.

<u>Drug Enforcement Administration has Jurisdiction over Defendant Currency</u>

The statutory authority of a law enforcement agency to request federal adoption of the forfeiture is set forth in Ohio Revised Code § 2981.14 (A) which provides:

> Nothing in this chapter precludes the head of a law
> enforcement agency that seizes property from seeking
> forfeiture under federal law. If the property is
> forfeitable under this chapter and federal forfeiture
> is not sought, the property is subject only to this
> chapter.

The authority of DEA to adopt the seizure of the Defendant Currency for federal forfeiture from the Twinsburg police department is set forth in 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b)(2)(C). 21 U.S.C. § 881(b) provides:

> Any property subject to forfeiture to the United States
> under this section {the section relates to drug forfeitures} may be seized by the
> Attorney General in the manner set forth in section 981(b) of Title 18.

18 U.S.C. § 981(b)(2)(C) provides:

> (2) Seizures pursuant to this section shall be made
> pursuant to a warrant...except that a seizure may
> be made without a warrant –
> (C) the property was lawfully seized by a State or
> local law enforcement agency and transferred to
> a Federal agency.

(5:11 CV 770)

*The Court's Conclusion of Law:*

B.      The Twinsburg police chief possessed statutory authority to request the federal forfeiture of the Defendant Currency, and the United States Drug Enforcement Administration possessed statutory authority to adopt the seizure of the Defendant Currency.

<u>Claimant Does Not Have Standing to Assert Claim</u>

.       In order to contest a governmental forfeiture action, the claimant must have statutory standing through compliance with Supplemental Admiralty and Maritime claims Rule C(6) as well as the Article III standing required for any action in federal court.  *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998).  Colorable claims which confer standing include ownership interests and possessory interests, such as the interest of a bailee.  *United States v. $515,060.42 in U.S. Currency*, 152 F.3d at 498.

However, "naked possession" claims are insufficient to establish standing.  Mere possession of the property as a basis for standing requires "some explanation or contextual information regarding the claimant's relationship to the seized property."  *Id.* (quoting *United States v. $191,1910 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994).[8]  The claimant bears the burden of demonstrating an interest in the seized item sufficient to satisfy the Court of her standing as a claimant.  *Id.* (citing *United States v. 526 Liscum Dr.*, 866 F.2d 213, 216 (6th Cir. 1989)).

---

[8] As noted in *United States v. $515,060.42 In U.S. Currency*, 152 F.3d at 498, there is a "common concern for 'straw man' transfers of property from criminal defendants to third parties and subsequent assertions of ownership by claimants who lack a legal interest in the property subject to forfeiture."

(5:11 CV 770)

*The Court's Conclusions of Law:*

C.     Notwithstanding Crumpler's claim of ownership and bailee interest in her Verified Claim, Crumpler's inconsistent and conclusory assertions[9] regarding her interest in the Defendant Currency fails carry her burden of demonstrating that she has a credible legal interest in the Defendant Currency which satisfies the Court that she has standing as a claimant.

D.     Crumpler has no credible legal interest in the Defendant Currency and is no more than a "straw man."[10]

---

[9] Crumpler claimed at the hearing that she procured the Defendant Currency from "Jesus Gonzales" but provides no information by which her claim can be verified, challenged or otherwise subject to scrutiny.

[10] The Sixth Circuit extensively addressed the Article III case-or controversy standing requirement as follows:

> However, due to concerns about "straw man" transfers, "naked possession" claims are insufficient to establish standing. When confronted with mere physical possession of property as a basis for standing, we require some explanation or contextual information regarding the claimant's relationship to the seized property.... The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property. This requirement derives from a common concern for "straw man" transfers of property from criminal defendants to third parties and subsequent assertions of ownership by claimants who lack a legal interest in the property subject to forfeiture....
> Although a claimant may assert an interest in a defendant property sufficient to confer standing, the Government is always free, as it was in this case, to challenge a claimant's factual allegations, develop information

(continued...)

(5:11 CV 770)

E.     Crumpler does not have Article III case-or-controversy standing to contest the forfeiture of the Defendant Currency.

<u>Even if Claimant has Standing, Defendant Currency is Subject to Forfeiture</u>

Proceeds from drug trafficking activities and/or proceeds used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. § 841 are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).[11]  Once the property is seized, the burden is on the government to establish by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).  The government may meet its burden through an aggregation of facts.  *United States v. $124,700 in U.S. Currency,* 957 F.2d 280, 284 (6th Cir. 1992).  Facts which have been aggregated by the courts to conclude that the property at issue was subject to forfeiture because of its relationship to drug trafficking include the same kind of facts in this case, which the

---

[10](...continued)
> through interrogatories and flush out would-be claimants
> with no real interest in the defendant property. (citations omitted)

*$515,060.42 In U.S. Currency,* 152 F.3d at 498-99.

[11] 21 U.S.C. § 881(a)(6) provides:

> The following shall be subject to forfeiture to the
> United States and no property right shall exist in them:
>
>> (6)All moneys, negotiable instruments, securities,
>> or other things of value furnished or intended to be
>> furnished by any person in exchange for a controlled
>> substance or listed chemical in violation of this
>> subchapter, all proceeds traceable to such an
>> exchange, and all moneys, negotiable instruments,
>> and securities used or intended to be used to
>> facilitate any violation of this subchapter.

(5:11 CV 770)

government has established by a preponderance of the evidence: large quantity of currency, manner of packaging, dog alert positive for drugs, lack of documentary support for explanations, and inconsistent, false and/or conclusory explanations. *See United States v. $252,300 in U.S. Currency,* 484 F.3d 1271, 1274-75 (10th Cir. 2007); *United States v. $124,700 in U.S. Currency,* 458 F.3d 822, 826 (8th Cir. 2006); *United States v. $117,920 in U.S. Currency*, 413 F. 3d 826, 829 (8th Cir. 2005); *United States v. $110,873 in U.S. Currency,* 159 Fed. Appx. 649, 652 (6th Cir. 2005).

*The Court's Conclusion of Law:*

F.	The government has met its burden of proof, by a preponderance of evidence, that the defendant currency constituted proceeds from drug trafficking activities and/or was used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. § 841 and, therefore, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

### III.  CONCLUSION

Based on the Court's findings of facts and conclusions of law made herein, the Court finds that the government has established by a preponderance of the evidence that the Defendant Currency in the amount of $677,660.00 is subject to forfeiture.  Claimant Crumpler failed to demonstrate by a preponderance of the evidence that she is entitled to claim the Defendant Currency, and  The government's motion to strike Crumpler's claim (ECF 23) is granted.

Claimant's motion to dismiss the complaint (ECF 11), motion to suppress and for return of illegally seized property (ECF 12), and the government's motion to delay its responses to

(5:11 CV 770)

Claimant's two aforementioned motions (ECF 13), have been resolved by the Court's rulings herein, and are moot and denied as such.

The government is directed to provide the Court with a proposed Order of Forfeiture.

IT IS SO ORDERED.

| | |
|---|---|
|  February 2, 2012 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |